UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20529-DPG

UNITED STATES OF AMERICA

v.

**JESUS GABRIEL RODRIGUEZ, JR.,**

**Defendant.**
_____/

## STIPULATED FACTUAL PROFFER IN SUPPORT OF PLEA

If this matter were to proceed to trial, the Government would prove the following facts beyond a reasonable doubt. The Parties agree that these facts, which do not include all facts known to the Government and the Defendant, **JESUS GABRIEL RODRIGUEZ, JR.**, are sufficient to prove the guilt of the Defendant of the above-referenced Information:

Co-conspirator testimony and corroborating evidence would show that, during the time period of the Information, the Defendant was the Chief Executive Officer ("CEO") of an armored car service named Transvalue. In his role as CEO, the Defendant solicited and obtained clients seeking to import gold into the United States and assisted those clients with armored transport, customs clearance, and brokerage services.

Co-conspirator testimony and corroborating evidence would show that sometime around 2015, co-conspirators began transporting gold from Curacao to the United States, and specifically to NTR Metals, which also did business under the name Elemetal LLC (hereinafter "NTR"). However, as Curacao had no mines, it was understood by the co-conspirators, including the Defendant, that the gold was likely brought to Curacao from other countries. Indeed, for this

1

reason – the likelihood that gold was illegally mined and smuggled out of other countries and smuggled into Curacao – NTR would not accept gold that was listed as originating in Curaçao. NTR had an anti-money laundering ("AML") policy that specifically prohibited gold from Curacao. The co-conspirators, who included salespersons from NTR that received a commission for the gold accepted by NTR, set about a plan to evade that policy, hiding the fact that the gold originated in Curacao. The plan was for the co-conspirators to route the gold from Curacao to Miami International Airport ("MIA"), ship the same gold to the Cayman Islands, and then from the Cayman Islands ship the gold back to MIA.

Between March 2015 and September 2016, NTR imported thousands of kilograms of gold worth more than $141 million into the United States from a company that was located in the Cayman Islands (hereinafter "Company A"). In each instance, the same gold was reported to U.S. Customs as having originated in Curaçao, and a few days later reported to U.S. Customs as having originated in the Cayman Islands. The Defendant, as CEO of Transvalue, assisted NTR salespersons and Company A in deceiving U.S. Customs by facilitating the movement of the gold through customs at MIA both when it transited between Curaçao and the Caymans, and again when it arrived back in Miami from the Caymans. The Defendant also assisted the scheme by having Transvalue physically transport the gold from MIA to NTR when it arrived from the Caymans. The Defendant was aware that this gold had traveled a tortured route and that the true origin of the gold, with U.S. Customs paperwork indicating the gold's provenance as being the Cayman Islands, was being falsely reported.

Though the transactions themselves did not immediately result in large profits for Transvalue, they provided an opportunity for significant value to the company, which the

Defendant wanted to pursue as CEO, beyond those immediate profits. There was a substantial financial benefit to Transvalue in being a more significant actor in the Caribbean and South American gold transportation market, of capturing a larger share of that market and in turn translating that growth to getting business in other markets where gold was transported, as well as to strengthening Transvalue's relationship and conducting more business with NTR and Company A in the Cayman Islands, all of which caused an accumulation of goodwill for Transvalue. Indeed, over the time period that the transactions took place, Transvalue's business did grow, as did the Defendant's salary as CEO, such that the estimated increase in value to the business as a result of this transaction is estimated to be at least $267,817.

JUAN ANTONIO GONZALEZ
~~ACTING~~ UNITED STATES ATTORNEY

Date: 1/24/22

By: _____
WALTER M. NORKIN
ASSISTANT UNITED STATES ATTORNEY

Date: 24 Jan 2022

By: _____
MICHAEL R. BAND, ESQ.
ATTORNEY FOR DEFENDANT

Date: 1/24/22

By: _____
JESUS GABRIEL RODRIGUEZ, JR
DEFENDANT