UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20529-DPG

UNITED STATES OF AMERICA,

        *Plaintiff,*

v.

JESUS GABRIEL RODRIGUEZ, JR.

        *Defendant.*

_____/

### DEFENDANT RODRIGUEZ'S MEMORANDUM IN AID OF SENTENCING

    JESUS GABRIEL RODRIGUEZ, JR. by and through the undersigned counsel, and pursuant to Rule 32 (f) of the Federal Rules of Criminal Procedure, Rule 88.8 of the Local Rules for the Southern District of Florida, and the due process clause of the Fifth Amendment to the United States Constitution, respectfully submits this Memorandum In Aid of Sentencing in order to provide information to assist the Court in fashioning a sentence based upon the Defendant's guilty plea that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. §3553.

### STATEMENT OF FACTS

1. On January 24, 2022, Mr. Rodriguez entered a plea of guilty to the sole count of the Information. The count charged the Defendant with entry of goods by means of false statements in violation of 18 U.S.C. §542 and 2.

2. Subsequent to the entry of the Defendant's plea a Presentence Report (PSR) was prepared. This report is approximately nineteen (19) pages in length. The Defense has

not objected to the facts contained within the PSR but seeks in this Memorandum to provide the Court with insight as to who this individual, this human being, is. We do not seek to diminish the allegations of wrongdoing perpetrated by Mr. Rodriguez. We address the surrounding circumstances of a person heretofore almost without blemish to allow the Court the opportunity to better appreciate the individual who stands in the dock.

3.  The Sentencing Guideline Offense Level, calculated by the United States Probation Office, is 2 with a "range" of 0-6 months.  The Plea Agreement, at paragraph 7, acknowledges that the government will recommend that the defendant be sentenced at the low end of the range applicable to him under the Guidelines.

4.  The sentencing in this matter is scheduled for Thursday, April 14, 2022.

## INTRODUCTION

Jesus Gabriel Rodriguez, Jr. is forty-six years of age, married for more than ten years to Laura and the father to Jay, seven years of age and Ian aged five.  The son of two immigrant parents and the brother to Michael. He has served his community through food ministries for almost twenty-five years, served on a Community Council for eight years, maintained friendships for better than forty years and has a legion of supporters who can testify to his integrity and concern for others.

### Title 18 U.S. § 3553(a) Sentencing Factors

When imposing sentence, the Court is required to consider all the factors set forth 18 U.S.C. § 3553(a) in determining what is a reasonable sentence in each case. See, United States v. Booker, U.S. 220 (2005); Rita v. United States, 551 U.S. 338 (2007). The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary,

to comply with the purposes set forth in paragraph 2." The Court is well aware of the § 3553(a) sentencing factors – and in the matter before this Court the Defense emphasizes "the history and characteristics of the Defendant." We seek to highlight Mr. Rodriguez's life identifying these factors, including his role in the offense to provide a fuller portrait of the individual.

## Role in the Conspiracy

Mr. Rodriguez was a long-time employee of his family's logistics (armored car) company (Transvalue). Ultimately, he worked his way up in the company and eventually became chief operating officer and a partial owner of the company. It was through the business he would meet Samer H. Barrage, Renato J. Rodriguez, and Juan P. Granda employees of Elemetal, LLC.

Transvalue was in the business of transporting valuables including gold. From March of 2015 through April of 2016 Transvalue with the knowledge of Mr. Rodriguez, after being cleared by U.S. Customs, picked up gold shipments at Miami International Airport from the Cayman Islands. This business arrangement benefitted "Company A" which was aligned with the employees of Elemetal. And from May 2016, through September 2016, in addition to the Cayman shipments, Transvalue assisted in the transportation of gold from Curacao at Miami International Airport, again after being cleared by U.S. Customs, assisting "Company A". The approximate value received by Transvalue for providing logistical support to Company A and Elemetal was $125.00 per shipment for a total of approximately $6000-$9000.00.

## Assistance to the Government

Long before his involvement with the Elemetal and Company A, Mr. Rodriguez provided assistance to federal law enforcement. Commencing 2013 he was identified as a prosecution witness for the government in a significant money laundering case. In this case

became aware of a significant government source/cooperator (who we believe remains an active government operator) and has not revealed this individual's identity to this day. Through the succeeding years he has at the government's request allowed the inspection of property held by his company. He has filed SARS (Suspicious Activity Reports) and reported dubious activities that he became aware of to law enforcement. He has cut off questionable individuals and companies from doing business with his company. He was the first to stop doing business with Harold Viches, a Chilean gold exporter. Cutting off Vilches led to a cascade of events which would lead to the arrests of the Elemetal employees.

Mr. Rodriguez established an internal compliance program – one of the first in his industry. This compliance program created at significant cost led to the filing of SARs and the halting business relationships. Indeed, the principal of Company A was "SARed."

## Community Service

At the age of twenty Mr. Rodriguez was elected to the West Dade Community Council. A – non-paying – position where he served his community for eight years. Since 1998 Mr. Rodriguez has assisted in providing food for the disadvantaged and recently his seven-year-old son has joined him.

## Letters

The Court will have the opportunity to read letters from the folks who know Mr. Rodriguez the best. They range from his current employer, who despite being aware of the allegations that led Mr. Rodriguez to pleading to a federal felony, hired him saying in his letter, "I know Jesus." Others also know Jesus. A friend of his for over forty years writes of his continued friendship with him. Former law enforcement and a current member of law enforcement address the man they

know.  Attorneys who know him, as well as friends, share with the Court their opinion of him. Finally, his wife put pen to paper to speak to the Court about who her husband is, their relationship and his parenting.

## Intangibles

Once news of Mr. Rodriguez's arrest broke in the media a company valued at more than twenty million dollars was sold at the bargain basement price of approximately two million dollars. Before the company was sold Mr. Rodriguez divested himself of any interest in the company.  He did, however, assure the continuation of the company and no employee lost his/her position.

His standing in the community has diminished.  He feels a sense of shame and embarrassment.  He has lost valuable rights, i.e., the ability to cast a ballot, possess a firearm and his future employment options are limited.

## Conclusion

The government's offer of a single count Information was accepted by the Defendant. Jesus Gabriel Rodriguez, Jr. owned up to his culpability. Is Mr. Rodriguez irredeemable? Can we entirely eliminate that the possibility that he is subject to redemption? "Redemption" means to deliver by paying a price[1].  What is the price Mr. Rodriguez should have to pay for his actions? The guidelines contemplate a sentence of 0-6 months. The Defendant respectfully requests that this Court impose a sentence at the low end of the Sentencing Guidelines. In this case a probationary sentence serves the ends of justice.  The Defendant believes that such a sentence meets the sentencing criteria of 18 U.S.C. §3553(a).  Mr. Rodriguez believes that such sentence

---

[1] Redemption is the English translation of the Greek word apolutrosis, meaning "to purchase in the marketplace."

appropriately takes into account his history and characteristics, properly punishes him for his involvement and most certainly provides adequate deterrence for similar action in the future.

Respectfully submitted,

**MICHAEL R. BAND, P.A.**

1224 Alfred I. DuPont Building
169 East Flagler Street
Miami, FL 33131•1210
Tel: 305•372•8500
Fax: 305•372•8504
Email: michael@bandlawfirm.com

/s/ *Michael R. Band*

MICHAEL R. BAND
Florida Bar № 228338

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 31st day of March 2022 a true and correct copy of the foregoing Sentencing Memorandum was furnished to all counsel on the list of counsel designated to receive electronic filings in this case.

/s/ *Michael R. Band*

Michael R. Band
